The load balancer takes that information and sends a SIN-prime packet. It is a collection of information that refers to the same connection. I see that I'm out of time. Thank you. Thank you, Mr. Perry. The case is taken into submission. The next case is number 05-1384, Gilda Industries v. United States. Mr. Herrick. Can we run out of water here in a few minutes? Please. It's true we've had a long morning. Good morning, Your Honors. Peter Herrick for Gilda Industries. Congress gave to the U.S. Trade Representative authority to establish a retaliation list to collect $116.8 million in duties to offset the EU ban on the importation of beef containing hormones. The USTR, in fact, established this retaliation list. Congress then issued a directive to the USTR that this list should be modified every 180 days. The USTR began the process of modification by issuing a Federal Register Notice collecting comments. The comment period closed on June 14, 2000. Since that date, absolutely nothing has taken place with the retaliation list that we're aware of. Now, to us, the failure of the USTR to follow the directive of Congress and to comply with the statutory scheme that it administers is just beyond comprehension, really. What's the relief here? Excuse me? What's the relief? Assume that we disagree with your argument, that we read this to say that include doesn't mean that. We reject your argument with respect to include. So we're left with the statute that arguably requires review of the list every 180 days and change in whole or in part. So what conceivable relief can your client get, even accepting the fact that the USTR has never looked at the list? There's a couple of remedies. One is the refinement of the duties that have been paid. On what basis? I mean, not only is there not a guarantee. I mean, there's not even an arguable likelihood that because all the trade rep had to do was review the list and change it in part, that your client's fees would have been affected in any way, shape, or form. So on what basis would you be entitled to a refund of the duties? Well, where there's prejudice to the importer caused by the delay of the agency, then under the authority given to the importer of national trade, they can formulate a remedy. Well, I guess I have the same question as this person. I guess what we both are wondering is where's the prejudice if, in fact, there's no basis on which you can assume with any confidence that you would have been taken off the list? Well, we have to be given, under due process, we have to be given the opportunity every 180 days to try to get off the list, however we approach that subject. Now, that has not been given to us for all these many periods that have elapsed. Now, take my client. So you should conclusively conclude, therefore, that you would have been taken off the list? No. All right. I agree you can't do that because there is no guarantee. For example, the public comments that were submitted in June of 2000, there were at least five requests that toasted breads under this tariff classification be removed. But, of course, the USDR never took action. So we don't know. Maybe it would have. Maybe it would not have. We don't know. We've been in the dark for nearly six years now. We have had no opportunity to go before the USDR and ask that we be taken off. Now— What kind of—I mean, we're talking about the statutory requirement that the trade rep review the list. And modify the list. He has to modify the list. He has to make changes. Right. You just suggested that we've had no opportunity to go before the U.S. trade rep or whatever. My client. I'm sorry. I mean, you're just—you're characterizing that as something implicit in the USDR's review of the list. Well, he has—by law, he has to review it every 180 days. Right. And he has not done so. And his failure to let us come before him every 180 days has prejudiced us in trying to get us removed from the list. Now, we would posit, perhaps, had he followed the law and every 180 days we went before the USDR and asked to be removed and it was constantly rejected, we make him back to this court and say that his decisions are being arbitrary in non-accordance with the law because he's not modifying the list as to our product anyway. Well, what is—on what basis would you argue that? You're not arguing that the statute requires that he take everyone or more than a revised part of the list. I mean, you're suggesting that if he had looked at the list every six months, revised part of the list, but your client remained on the list, that that would give you an argument that he was somehow arbitrary? We would come back with that argument, yes. I mean, I don't know, just common sense or right or something that we could be on that list forever. I mean, and we're talking about toasted breads having nothing to do with beef. My client—toasted breads from Spain are duty-free. The imposition of 100% duties for six years has doubled the cost on my client's toasted bread. It makes him anti-competitive, uncompetitive with other persons not subject to the same. I mean, it has to come to a point in time when—and also what the Congress said is that if your list is not getting the results, which would be—the result would be the EU would begin importing beef. Then you've got to make changes because whatever you're doing isn't working. Well, but here's the crux of what is troubling me about this in your example. To tease it up, it would seem to me that what Congress is addressing is the list may not be tough enough on the EC, and that therefore you've got to add some more stuff to the list, not necessarily take breads off and put something else on, but that you revise the list by making it tougher on the foreign nation in question. And that leads me to the question of where in this statutory scheme is Congress trying to protect a person in your client's position as opposed to trying to protect, in this case, the beef exporters? It seems to me the whole purpose of the statute is to try to devise a mechanism for turning the screws up on the foreign nations on behalf of the particular exporter who has been prejudiced by something done by the foreign nation. So in terms of what is conventionally referred to as standing for—to show that you're arguably within the scope of protection of the statute, it's not clear to me that your client is arguably within the scope of the protection devised by this statutory scheme. Where is there an indication that you were intended to be a beneficiary of the scheme? Oh, we're not. You're not a beneficiary? No. We're being prejudiced by the scheme. Yeah, but if it's clear that you're not intended to be a beneficiary of the scheme, then I don't see how you have standing to protest a procedural violation of the statute. I didn't realize—I wasn't aware that standing was an issue, but I think the fact— Our government refers to, I guess, Bennet against Speer, which they don't make it a large matter, but that was my take on what their reference to that case entailed. Well, I mean, of course, we argued that the—whether the inclusion should only be beef, whether that is correct. I mean, that's our interpretation anyway. What's toast to bread got to do with beef? Nothing. Why does the government keep penalizing us, GILDA, for years and years and years, and it's not working? Like your Honor said, the scheme is to turn the screws up on the EU to get them to comply and import U.S. beef, and whatever they're doing now is not working, so make a change. That's what the statutory scheme is. Congress told the USTR it's a carousel provision. You're supposed to rotate the products, which in effect will rotate the importers. Let's go back to the requested relief. I gather, then, that the relief you're requesting, that if we were to conclude that there was some flaw in the administration because there had been no 180-day hearings for six years, I gather that that in itself would be insufficient, in your view, without a holding or a presumption that your client would necessarily have been removed from the list had those hearings taken place, and that unless our analysis reaches that point, that wherever you are, it would be insufficient. I don't think you can make that presumption because, like you said, the USTR could look at every 180 days and leave us on the list. There is no guarantee, as your Honor said, that we would be taken off the list, but due process requires that we be given the opportunity to get off the list, and where we have been denied the due process, then there should be remedy for that lack of due process, which would be the refund of duties. We also indicated that we think the retaliatory list expired after four years because there was no study that was ever done as required by the statute so that that part was terminated, and if that's true, then any duties collected after the termination of the four years should be refunded because it was illegally collected. We also pointed out in our FOIA request, we discovered that in the year 2003, the government collected more than $116 million, and they're not allowed to collect more than $116 million, so that money should be refunded. There's a number of things that have to be looked at that this Court, I believe, should be involved in to get the USTR straightened out, and where there has been any dereliction by the USTR, those monies should be refunded. I believe there's ample authority to fashion relief that we're requesting. Can I ask you just a technical question about—and this goes to any potential prospective relief. The government, in its brief—I understand your position with respect to the government's showing or lack thereof of an imminent settlement before the Court of International Trade, but the government also points out in its red brief that there's some 2005 statement in the Federal Register that talks about or establishes imminence, at least currently. Is there any dispute about that, that at least currently there's a basis upon which the Trade Rep can and has determined that settlement is imminent? The only thing—there was a public relations release from the EU that we cited to in the appendix we submitted, and I can't point to it right now, that indicated that, as far as they're concerned, there was no imminent changes that were going to be made. Was that current? I know you had cited early on an earlier release by the Trade—but that was, I think, by the Trade Rep to establish that the Trade Rep did not— All right. Let's move to the other side. We'll save your remaining time. Thank you, Your Honor. Mr. Silberband. Thank you, Your Honor. May it please the Court. Gilda argues that it has been deprived of its due process rights. However, as this Court has held, an importer does not have due process rights. Mr. Silberband, of course, the question in everybody's mind, and I'm sure you have an answer for it—I hope you do—is it looks as if the Trade Rep hasn't complied with the specific provisions of the statute. If not, why not? And if so, how so? This statute was passed—the carousel provision was passed for the benefit of the exporters affected and for the benefit of the USTR in its negotiating position, Your Honor. And the USTR, in his judgment, which we submit is limited to an extremely narrow scope of review, has determined that a solution is imminent. He has determined that not rotating the list provides the best opportunity to resolve the B-formula dispute. And he's made those determinations regularly for the last five years? He has not published anything, Your Honor, that says my determination is that this is imminent. But it is his determination and it is his discretion to make that determination. If he determines that it's most effective to rotate this list, then he will go ahead and do so. So your answer to the apparent facial violation of the statute is that since nothing would have happened anyway, he didn't have to comply with the statute? No, Your Honor. And what is the answer to the absence of the 180-day review, public review? First of all, the USTR has made a determination that a solution is imminent. Are you saying not in 2005? Or are you saying that he's consistently made that determination? He has consistently made that determination. And how do we know that? We submit that it is within his discretion to make that, and that is not a reviewable determination. But how do we know whether he has or not? You have to know that something has happened. I mean, how do we know that he's made that determination? The continuing negotiations with the European communities demonstrate that there is a belief that a solution is imminent. Otherwise, there would not be continuing negotiations. And this case would have been submitted to a WTO panel long ago. Is that on the record, or you're telling us that today for the first time? The continuing negotiations? What you've just told us, that there was a continuing belief that the European community would abandon this notorious and widespread, as we all know, press on which governments fell in terms of importing American beef? In the annual reports that the USTR submitted to the president, which Judge Gross referred to before, which are published on the USTR website. They're not in the Federal Register. Well, you only cite the 2005 report in your brief. Yes, Your Honor. Are you suggesting that every one of these annual reports suggests that the settlements are imminent? The 2004 does. I would have to look at the 2003 report to determine. I'd be happy to brief the court on that. So what is your answer to the failure to comply with the statute? First of all, Your Honor. That it's not reviewable or it doesn't matter? That is not a failure to comply because there is a determination of imminence. But I just heard you say that you didn't know, as of 2003 and earlier, whether there had even been such a determination. I'm sorry, Your Honor. I meant to say that I did not know whether that was present in the reports. I know from my discussions with my client agency that that was a determination. There was a private communication that every 180 days there was an internal discussion and a decision not to hold a hearing. A hearing, Your Honor? I'm not sure anything in the statute calls for a hearing. Not to provide an opportunity for review of the list or modification of the list? There was that determination made not to rotate the list. There is nothing in the statute that provides for review or a hearing. Do you have record evidence that such a determination was made? I do not, Your Honor. But you're representing now, what, on your own private information? I am representing that that is not a reviewable determination by this court, Your Honor. His determination may not be reviewable. In other words, if the U.S. Trade Rep had said this is imminent and, in our view, we think that's absolutely wrong and bogus and it really wasn't imminent, you may be right that we can't review his determination that it was imminent. But the question we're going to is whether he actually made a determination. Yes, Your Honor. And you're saying whether or not he even made a determination is not a reviewable issue for us? I'm saying that the USTR, by not rotating that list, has implicitly made that determination. Yes, Your Honor. Even if, and let's just hypothetically, I know this isn't the case, but hypothetically, if the USTR had issued a press release in 2001 or 2 or whatever and had said explicitly there is no hope that this dispute will be resolved within the lifetime of any living person, that nonetheless, we would be required to deem the trade representative to have made a determination of imminence? Is that the position you're in? If within 180 days after that, it's possible that he changed his mind. No, that would certainly be evidence that at that point in time, he did not— I'm just trying to see exactly what our role is here. In other words, if we have incontrovertible evidence, let's say, that he didn't make such a determination, are we nonetheless barred from reviewing the compliance or noncompliance with the statute? I'm asking the same question Judge Prost did. I'm just putting it in the form of a hypothetical. As you were suggesting earlier, Your Honor, I do not believe GILDA possesses standing to bring that complaint before this court. It does not possess prudential standing pursuant to the statute. This statute is clear in the legislative history and the statutory language. It is intended to benefit the exporters and the affected domestic producers, and it was passed for the benefit of the USTR in its negotiating positions. Therefore— That's an argument. Not much, if at all, fleshed out in the brief. I mean, I see that you cited— I believe we did not explicitly state that there was no prudential standing because GILDA does possess standing under 1581A to bring its protest and contest those protests in the Court of International Trade. However, GILDA has not been deprived of any due process. Therefore, as we argued in our brief, the court should not go on to make a determination of whether the USTR properly implemented the statute. And even if it did, that's subject to such a narrow standard of review that the court should not address its determinations. Let me just revisit this because I don't understand. Yes, Your Honor. Is it your position that—and this goes to the imminent determination— that in the absence of clear evidence that the US trade rep thought that it was not imminent, we should presume that he—sort of presume that this government official complied with the law, and therefore, because he never—he didn't do the review, we should presume and accept that he must have made the determination that a settlement was imminent? Is that your position? Yes, Your Honor. There is a presumption of regularity for government officials that they have complied with their duties under the law. Unless there is evidence to the contrary, that presumption of regularity in this court applies to executive branch officials. Okay. And I think, though, in that regard, I think in the Blue Brief or somewhere, the appellant did cite to some press release or something, maybe back in 2000, in which it did appear that the trade rep said something opposite. I believe— I may be wrong. I believe Gilda cited to European communities press releases, which do not go to the determination of the United States trade representative. Those go to the determination of the Europeans. The U.S. trade representative may believe that a solution is imminent, while the European communities do not. No, I appreciate that. I'll look for it because I can't remember what the— Certainly not. Moreover, even if there was—if this court did reach the question of whether this statute was properly implemented, because the time periods in this statute are not mandatory, there is no duty owed in this case. Specifically, I'm referring to this court's recent decision in Timpkin, in which it—I quote, if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own course of sanction. There is absolutely no consequence in the statutory language here. But isn't there a difference between timing issues and other issues? For instance, if the challenge here were that the trade rep did the review two months late, then I think one would apply that rationale and say, okay, Congress—even though they said you have to do it every 180 days, there's no relief for failure to comply. But here, isn't this case something else? It's not a failure of time. The argument, at least, the allegation is that it's a failure to do it at all. So it seems to me that the cases that suggest if there's no ramification spelled out for failure of time, it would be a stretch to say that that means if you never do it—not that the allegation is it was done untimely, but that there was no compliance with the statute at all because Congress didn't spell out relief for the lack of timeliness, we can't review it. Do you see my concern? I do see your concern, Your Honor. And if the court were to reach that, as we submitted in our briefs, that would go almost towards the mandamus argument. And I think that the D.C. Circuit opinions that we cite are instructive that the D.C. Circuit has held that a four-year delay is not unreasonable. It's held a nine-year delay is not unreasonable. Depending on— Depending on the circumstances. Depending on the circumstances. Yes, Your Honor. But not that they were excluded from reviewing the reasonableness. And I'm trying to understand your position if you say that it's not subject to review at all. Your Honor, our position as far as the mandatory verse directory is that it's a—if anything, if the court were to reach that, it's a delay at this point. There's no final agency action if you look under an APA standard of review, which, as we cite in our brief, does not apply to U.S. CR actions. And the delay being that—so you're saying he didn't—the trade rep didn't violate the statute by not doing review. He just is six years late. I guess I'm a little troubled by your—you make, on the one hand, an assertion that, yes, we should assume that he did review it. I mean that he did take his statutory requirements seriously, that he reviewed it, and he just concluded we should assume—on the one hand, you're telling us we should assume that he reviewed it and made the determination that it was imminent. Yes. On the other hand, you're telling us that we should assume and accept that he may not—he didn't do anything at all for the past five years, but that that's just a delay that he— I mean, don't you have to decide what your theory is in terms of what factually has happened in this case? Your Honor, our position is that he made this determination and, therefore, the exception— So the timing of this issue doesn't come into play because if he made the determination, then he's not out of time, right? It's an argument made in the alternative, Your Honor. If the court were to determine that it did not agree with our time—with our exception argument, then in the alternative, we would argue that the delay applies. Let me ask you about something you said a moment ago, and I just want to tease it out a bit. Yes, Your Honor. That the USTR is not subject to APA-type review. Correct, Your Honor. And your theory on that is that the USTR is an agent of the President, and the President is not subject to APA review. That's correct, Your Honor, because the USTR is part of the executive office of the President. On the organizational chart, that's right. But, I mean, isn't the Attorney General also an agent of the President? And subject to the President's direction, the President says to the Attorney General, go do X. The Attorney General goes and does X, right? But the Attorney General is a separate cabinet official with its own agency. The USTR is the President—the statutory scheme makes the USTR basically the President's right arm in trade matters. But the Attorney General is the President's right arm in law enforcement matters. I'm wondering whether you're drawing a distinction between agencies that turns on whether Congress has called them cabinet officers or non-cabinet officers when they do exactly the same thing with respect to the President. Is your argument that anybody who happens to be within the organizational chart, within the executive office of the President, is not an agent? Even though that person—if tomorrow Congress decides we need to have Homeland Security more closely allied somehow with the President and we're going to put the entire Department of Homeland Security under the executive office of the President, does that mean that nothing that the Department of Homeland Security does is subject to APA review? I believe under the—it would depend on the statutory scheme. I believe— Well, the statutory scheme is they say we really like the way we have OMB and environmental— what's the environmental group that's within the executive office, and we like the way the USTR is set up. We're going to do the same thing with Homeland Security. Would that take everything Homeland Security does outside of the reach of the APA? If the statutory language was clear and it did not fall within the APA's specific provisions— Well, but the APA doesn't have a specific exclusion for the USTR. The APA definition of agency is very broad. It excludes Congress, the courts. That's pretty much it. And I believe this is one of the issues that is before the court in motion systems currently, Your Honor. At least it was discussed in the oral argument. There are some cases, are they not? Is there a D.C. Circuit or at least D.C. District Court cases that have held that the trade rep is covered by the APA? I am not sure. You're not aware of any? I'm not aware of those cases. Okay. Have we exhausted this? Have we exhausted Mr. Silverbrand as well? For these reasons, we ask that you affirm the child court's determination in all aspects except jurisdiction. Thank you, Your Honor. Thank you, Mr. Silverbrand. Mr. Herrick, you have some time left. Question on a couple of the press releases. One is referred to in the appellate's reply brief at page 10, citing to the trade reps where he says, at this time, neither of these exceptions, which is the imminent exception, appears to apply in the beef or banana cases. And this is a trade rep press release? That's a trade rep. This is the one I was thinking of. And the other one is that we refer to is a E.U. press release issued on August 04 to page 457 of the appendix in which they're complaining about the sanctions on the retaliatory list and then filed a complaint with the WTO that they should be removed. So that hardly indicates that the settlement was imminent. Where is the press release that you cite at page 10? The press release itself. Where is that in the joint appendix? You don't have a cite in your brief? No, I don't. That's my error there. It was the press release announcing the request for public comments to the modification. I'm not sure. I don't want to take up your time here. Thank you. I'm sorry for not putting it there. You're welcome. And I know the question of a remedy. You know, what remedy can this court grant my client? I would refer to the Shinye case out of this court where they indicated the Court of International Trade has been granted broader remedial powers in granting monetary judgments and that they also have the ability to form relief appropriate to the situation as was set forth in the Shinye. So I think the grant of power to the court is, you know, if they see something's wrong, if you determine, for example, that the inaction of the USTR is wrong and violates the statute, there's a lack of due process. And I think that you can form a remedy by refunding the duties to my client. And as pointed out in Swisher, the request for refund of money is a protestable issue. We would further say that there is APA review of the USTR because if you look at any of the Federal Register notices establishing the retaliatory list and also setting up public comments, it always indicates this is something being done by the USTR and not by the President. So the USTR is the one that did everything with regard to that, and that makes them subject to the APA review. Any other questions? Yes, we have a question for Mr. Silverbrand. I would like to just ask Mr. Silverbrand if he has any comment on that press release that was raised in the meeting. Only the timing of it, Your Honor. It was right at about the time the statute was passed. So the determination, oh, it's on May 26, 2000, I believe. Yes, and the statute was passed that year. The rotation since then, it's certainly feasible that the USTR has made a determination that there is likely to be an imminent solution to this. Thank you, Mr. Herrick. Do you need to have the last word on that point, or have we exhausted it? No, Your Honor. Okay, thank you. And the case is taken under submission, Mr. Herrick, Mr. Silverbrand. Thank you.